IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANTHONY C., SR.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:20-cv-564 |
| | ) |
| KILOLO KIJAKAZI[2] | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Anthony C., Sr. ("Anthony") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Anthony argues that the Administrative Law Judge ("ALJ") erred by failing to properly (1) determine his physical residual functional capacity ("RFC") using a function-by-function analysis, (2) assess his mental impairments, and (3) assess his allegations regarding his symptoms. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 19) and **DENYING** Anthony's Motion for Summary Judgment (Dkt. 17).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

the Commissioner's conclusion that Anthony failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Anthony filed for SSI on October 5, 2017, alleging disability beginning on October 5, 2017,[4] due to physical and mental impairments including musculoskeletal issues, anxiety, panic attacks, sleep apnea, high blood pressure, chronic constipation, and anger. R. 10, 197–204, 221. The state agency denied Anthony's application at the initial and reconsideration levels of administrative review. R. 118–122, 126–128. The relevant period for Anthony's SSI claim is from his October 5, 2017, application date through the ALJ's decision on October 16, 2019. See

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[4] During his hearing, Anthony amended his alleged onset date to October 5, 2017, the protective filing date of his SSI application. R. 10, 42–43.

20 C.F.R. § 416.202 (explaining that a claimant is not eligible for SSI until, among other factors, the date he files an application for SSI benefits); 20 C.F.R. § 416.501 (stating that a claimant may not be paid SSI for any period that precedes the first month he satisfies the eligibility requirements, which cannot pre-date the date on which an application was filed). On August 19, 2019, ALJ David Lewandowski held a hearing to consider Anthony's claim. R. 39–60. Counsel represented Anthony at the hearing, which included testimony from vocational expert Barry Hensley. On October 16, 2019, the ALJ entered his decision analyzing Anthony's claim under the familiar five-step process[5] and denying his claim for SSI benefits. R. 10–27.

The ALJ found that Anthony had not engaged in substantial gainful activity since October 5, 2017, the application date.[6] R. 12. The ALJ determined that Anthony suffered from severe impairments of cervical and lumbar degenerative changes, sciatica, obesity, major depressive disorder, post-traumatic stress disorder ("PTSD"), bipolar disorder, and anxiety disorder. Id. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 14–16.

The ALJ concluded that Anthony retained the RFC to perform light work, except that he could occasionally perform postural activities, but never climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to cold temperatures and industrial hazards. He could

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the Claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[6] Anthony was 41 years old on the application and amended onset date, making him a younger individual under the Act. R. 25.

3

understand, remember, and carry out simple instructions and perform simple tasks, occasionally interact with others, and adapt to gradual changes in the customary workplace setting. He was expected to be off task less than 15% of the workday. R. 16. The ALJ found that Anthony had no past relevant work, however, Anthony could perform other jobs that exist in significant numbers in the national economy, such as laundry sorter, hand packer, and laminator. R. 25–26. Thus, the ALJ determined that Anthony was not disabled. R. 26. Anthony appealed the ALJ's decision, and the Appeals Council denied his request for review on July 20, 2020. R. 1–4.

## **ANALYSIS**

Anthony alleges that the ALJ failed to properly (1) determine his physical residual functional capacity ("RFC") using a function-by-function analysis, (2) assess his mental impairments, and (3) assess his subjective allegations regarding his symptoms.

### A. Medical History

1. Treatment History

Throughout 2018, Anthony regularly visited Roanoke Salem Family Medicine to address his ongoing complaints of panic attacks, major depressive disorder, PTSD, and sciatic nerve pain with medication, heat, osteopathic manipulations (OMT), and stretching. See, e.g., R. 413–414, 436–437, 438–439, 830, 841, 854–855, 879. At his visit on February 12, 2018, Anthony had a cane, but Nalliene M. Chavez Rivera, M.D. determined that he was tender to palpation over the lumbar spine, with no diminished strength or focal neurological deficits. R. 413–414. On April 13, 2018, Anthony had full range of motion without pain, no focal neurological findings, no movement disorder, and intact sensation, motor function and cranial nerves. R. 439.

In September and December 2018, Anthony visited neurosurgeon Gregory A. Howes, D.O., for complaints of chronic low back, left rib, left leg, and cervical pain. R. 940, 947. Dr.

4

Howes determined that Anthony had no deformity of the lumbar spine or lower extremities, full motor strength in the upper and lower extremities, normal muscle bulk and tone, no atrophy, and intact sensation to touch and pinprick. R. 942. Dr. Howes observed that he walked without a limp, list, or pelvic tilt, and recommended pain management and possible injections, along with physical therapy and lifestyle changes. Id. An x-ray of Anthony's lumbar spine in December 2018 by Audrey Steier PA-C showed mild degenerative changes in the lower lumbar spine, but no significant malalignment or interval change in alignment with flexion or extension and no visible acute rib facture. R. 927, 953–954.

From 2018 to 2019, Anthony also visited Andrew Crichlow, M.D. at Blue Ridge Pain Management Associates for neck, left leg, and low back pain. See, e.g., R. 464–497. On October 30, 2018, Dr. Crichlow performed a lumbar epidural steroid injection, which Anthony reported on December 4, 2018 resulted in a 20% overall improvement in his pain. R. 460, 465. At appointments from December 2018 to April 2019, Dr. Crichlow noted moderately reduced lumbar spine flexion, equivocal straight leg raise tests, an antalgic gait, and moderate difficulty arising. R. 467, 472, 476, 480–481, 490–491, 495–496. However, Anthony also had a normal range of motion in the cervical spine, normal strength, no atrophy, and intact sensation. Id. At these appointments, Anthony reported that he was able to cook, clean, and perform personal hygiene. R. 464, 469, 474, 478, 488, 493.

On January 17, 2019, George M. Baylor, M.D. reviewed Anthony's lumbar MRI and found that Anthony did not appear to be a candidate for a MILD procedure (minimally invasive lumbar decompression). R. 475. On May 29, 2019, Anthony had a follow-up visit with Dr. Howes and the doctor observed that Anthony had a limp on his right side but was able to rise from a seated position without difficulty and walk without an assistive device. R. 926. Dr.

Howes found, despite his continued neck, left rib, and radiating low back pain, that Anthony had full strength in his upper and lower extremities, negative straight leg raise test, no sensory deficits in the lower extremities, and normal knee and ankle reflexes. R. 926–927. Dr. Howes advised Anthony to continue his medication and physical therapy. R. 927.

Regarding his mental health, Anthony began treatment for his anxiety in January 2018, after he filed for SSI. R. 373. Obafemi Ifelowo, M.D. observed that Anthony appeared withdrawn, his mood and affect were flat, he spoke in a monotonous voice, but he also was appropriate in interactions. R. 374. Dr. Ifelowo prescribed medications for anxiety and insomnia and Anthony denied counseling. Id. On February 5, 2018 Dr. Chavez Rivera noted that Anthony had a normal mood and affect and was appropriate in interactions. R. 414. In February 2018, Anthony reported symptoms of depression, anxiety, and PTSD following his incarceration. R. 410–411, 414.

Anthony also saw behavioral health therapist Katherine Lee, LPC in 2018. R. 432–435, 439, 822–823, 829, 849–850, 860–861, 865–866, 887–888. On February 22, 2018, Ms. Lee noted that Anthony was alert and oriented, dressed appropriately, had normal speech, fair eye contact, depressed mood, and fair attention and memory. R. 411. Ms. Lee ordered Anthony to practice deep breathing and complete a daily activity log. R. 412. Dr. Crichlow and Chidinma Osineme, M.D. had similar mental health observations from 2018 to 2019, including that Anthony was well-groomed, with normal mood, affect, communication ability, attention, and concentration. See e.g., 467, 472, 476, 481, 490–491, 496, 892–893, 897–898. From May to October 2018, Anthony reported continued anxiety and depression, but also that he had "great" improvement with therapy with Ms. Lee (R. 827), counseling was helping his depression (R.

6

854), taking rides and walking outside resulted in improved mood and well-being (R. 892), and coloring and listening to music kept his thoughts occupied for a short time (R. 897).

Throughout 2019 Anthony received psychiatric care at the Center for Emotional Care. R. 815. At his initial assessment, Anthony reported anxiety, anger, feeling sad for no reason, thinking others are after him, and that he had dreams of being beaten in prison. Id. At the monthly examinations with Mukesh Patel, M.D., the doctor continuously observed that Anthony was appropriately dressed, alert, cooperative, had a depressed and anxious mood with a blunted affect, normal thought process, recent, and remote memory, fair insight, and partial judgment. R. 809–810, 813, 816, 956–957, 960, 963. From January through September 2019, Anthony reported no change in his symptoms and at times reported improvement in anger or worsening mood. R. 809–814, 956–957, 963. By June 2019, Anthony's symptoms were mild. R. 956, 959.

2. Medical Opinion Evidence

On February 7, 2018, William S. Mercer, PT performed a physical consultative examination. R. 403–406. Mr. Mercer observed that Anthony was well-developed with hypertrophied shoulders and upper arm musculature, and found that Anthony's motor strength showed significant weakness of all upper extremity musculature and in the lower extremity calf musculature below the knees, motion deficiencies throughout the spine and extremities. R. 403–405. Mr. Mercer noted that Anthony used a cane, transferred very slowly, that he preferred to lean on his right hip when sitting, and that he took about twenty seconds to stand up. R. 405. Mr. Mercer determined that based on Anthony's "current symptoms and his current reported tolerances" that he was limited to less than an hour of standing and walking, and only two or three hours of sitting in an eight-hour workday. Id.

On March 5, 2018, state agency physician Jack Hutcheson, M.D., conducted a current

evaluation, and found that Anthony could lift and/or carry ten pounds occasionally and less than ten pounds frequently; sit about six hours and stand and/or walk significantly less than two hours in an eight-hour day; push/pull less than occasionally; never climb ladders, ropes, or scaffolds or crouch; occasionally perform other postural activities; was limited in reaching and handling; and should avoid even moderate exposure to vibration and all exposure to hazards. R. 72–74. A month later on April 13, 2018, Dr. Hutcheson completed an updated review of the record, and found instead that Anthony could sit or stand/walk for six hours in an eight-hour work day, occasionally lift twenty pounds, frequently lift ten pounds, and occasionally perform postural activities while frequently balancing. R. 90–92. He again noted Anthony's use of a cane and gave great weight to Mr. Mercer's consultative examination. R. 71–72, 89–90.

On March 14, 2018, state agency physician Alicia V. Blando, M.D., found that Anthony could perform medium work with limitations. R. 74–78. In making this assessment, Dr. Blando noted the various inconsistencies in Mr. Mercer's consultative examination and explained that the use of an assistive device was not established in the record. R. 75, 77.

On May 24, 2018, state agency physician Robert McGuffin, M.D., reviewed the record and found that Anthony had no limitations pushing/pulling except with respect to lifting/carrying; could perform unlimited balancing; could frequently crouch, crawl, and kneel; and occasionally perform other postural activities. R. 108–110. Dr. McGuffin found no manipulative or environmental limitations and explained that records showed largely normal basic physical examinations, that his use of a cane was highly questionable, and that Mr. Mercer's examination was not consistent with treatment records. R. 110.

On April 2, 2018, state agency psychologist Howard S. Leizer, Ph.D., reviewed the record and found that Anthony had mild difficulties adapting or managing himself, and moderate

difficulties understanding, remembering, or applying instructions, interacting with others, and concentrating, persisting, or maintaining pace. R. 87–88. Dr. Leizer determined that Anthony was capable of simple one and two-step instructions with minimal difficulties; could complete a normal work day without more than regularly scheduled breaks or supervision; would be better suited for employment with minimal interaction with others; and would be capable of adapting to gradual changes in the workplace. R. 93–94. Similarly, on May 25, 2018, state agency psychologist Eric Oritt, Ph.D., reviewed the record and agreed with Dr. Leizer's assessment, and found that Anthony was capable of unskilled work with the limitations listed by Dr. Leizer and noted that Anthony's complaints were not consistent with the medical evidence. R. 110–112.

### B. Physical RFC and Function-by-Function Analysis

Anthony argues that the ALJ insufficiently explained his conclusion that Anthony can perform light work except he could occasionally perform postural activities, but never climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to cold temperatures and industrial hazards. Pl.'s Br. 20–24, Dkt. 18. Specifically, Anthony argues that the ALJ failed to make specific findings regarding whether his impairments would cause him to experience episodes of pain necessitating breaks and how often those breaks would occur. Id. at 21. Anthony further asserts that the ALJ failed to specify whether his finding that Anthony would be off task less than 15% of the workday because of physical or mental impairments, or a combination of both. Id. at 21–22.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Mascio v. Colvin, 780 F.3d. 632, 636 (4th Cir. 2015). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical

9

evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

A function-by-function analysis requires the ALJ to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996).[7] The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

(citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weightlifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

    Here, the ALJ performed the required function-by-function analysis. The ALJ summarized the medical evidence and the hearing testimony and cited to specific exhibits and page numbers. R. 16–25. The ALJ adequately explained the level of work that Anthony could complete given his physical impairments of low back and lower extremity symptoms, neck and upper extremity symptoms, and obesity, the medical evidence that was considered in reaching his conclusions, and an explanation of the persuasiveness given to the medical opinions. R. 19–21, 23–25. The ALJ also stated that there were "obvious and significant inconsistencies in [Anthony's] presentation during the consultative examination" in February 2018. R. 24. Specifically, the ALJ noted that during Anthony's physical consultative examination Mr. Mercer found that Anthony had "weakness of all upper extremity musculature and his lower extremity calf musculature below the knees" yet he appeared well-developed, had hypertrophied shoulders and upper arm musculature, and had no atrophy in his lower extremities. Id; see R. 403–405. The ALJ further noted that although Anthony complained of left-sided numbness at the examination, he walked with his cane in his left hand against his left thigh, which the ALJ determined was the wrong the side for his reported symptomology. Id.

    The ALJ reviewed and discussed the medical evidence regarding Anthony's alleged back and lower extremity symptoms and concluded that further limitations were unwarranted based on Anthony's fairly conservative course of treatment and the overall objective evidence. R. 19–20.

11

The ALJ also noted that Anthony was only offered conservative treatment following his MRI on August 2018 and that although Anthony's gait was antalgic, he had normal muscle tone and strength and sensation throughout both lower extremities and no range of motion deficits. R. 20; see also R. 466–467, 471–472, 476–477, 480–481, 490–491, 495–496. Similarly, the ALJ considered that during Anthony's neurosurgery consultation in September 2018 he had full motor strength in the upper and lower extremities, normal muscle bulk and tone, intact sensation to touch, and walked without a limp, list, or pelvic tilt. R. 20, 941, 942. The ALJ further noted inconsistencies with Anthony's allegations such that in May 2019, Anthony had a limp on his right side but was able to rise from a seated position without difficulty and walk without an assistive device. R. 20, 926. Thus, the ALJ determined that Anthony was "reasonably limited to the light level of exertion and has additional postural and environmental limitations as stated above, to accommodate his back and lower extremity symptoms." R. 19.

The ALJ also adequately addressed Anthony's neck and upper extremity symptoms and how the symptoms were considered in the physical RFC finding. The ALJ wrote that the "lifting, carrying, postural, and environmental limitations would adequately accommodate the claimant's neck and upper extremity symptoms." R. 20. The ALJ explained that Anthony did not complain of neck pain prior to August 2018 and that he was diagnosed with spasm probably secondary to a strain. Id. The ALJ further noted that Anthony complained of neck and left rib pain in neurosurgery encounters in December 2018, but an x-ray showed no visible acute rib fracture. Also, at a May 2019 neurosurgery appointment, Anthony reported that he was "no longer weightlifting and even has trouble doing body weight exercises, such as pull ups," but he still had 5/5 strength throughout both upper extremities, including grip. Id.

Further, the ALJ properly reviewed and assessed the medical opinion evidence to determine Anthony's physical functioning. R. 23–25. The ALJ found Mr. Mercer's consultative examination opinion in February 2018 unpersuasive because it was inconsistent with the medical evidence and "superficially supported by [Anthony's] self-reports." R. 24. Likewise, the ALJ determined that Dr. Hutcheson's finding was unpersuasive, as it relied on Mr. Mercer's opinion and was inconsistent with normal neurological findings at other examinations. Id. Instead, the ALJ found the state agency physicians persuasive to the extent that their restrictions to light work with some postural limitations were supported and consistent with the evidence R. 23, 90–92, 108–110. For example, the ALJ found that both state agency physicians supported their assessments with radiographic and examination findings relating to Anthony's back. R. 23. In contrast, Dr. Hutcheson overly emphasized abnormal findings from Mr. Mercer's examination, while ignoring evidence from other encounters, including Dr. McGuffin's discounting of Mr. Mercer's limitations. Id. The ALJ also noted that the state agency physicians did not have access to more recent evidence, such as Anthony's pain management and neurosurgery notes, so the ALJ found that slightly different environmental and postural limitations were warranted. Id.

Contrary to Anthony's argument that the ALJ failed to specify whether Anthony would be off task less than 15% of the day due to his physical impairments, mental impairments, or a combination, the ALJ clearly addressed this issue. As discussed below, the ALJ associated the 15% off task limitation with Anthony's mental impairments, writing "the record supports no more than a "moderate" limitation in [concentrating, persisting, or maintaining pace], which is accommodated by the work-related restrictions that he is expected to be off-task less than 15% of the workday." R. 15.

13

Accordingly, the ALJ adequately explained how he arrived at Anthony's physical RFC findings and provided an accurate and logical bridge between the evidence and the findings as required in SSR 96-8p.

### C. Mental Impairments

Anthony argues that the ALJ failed to properly assess his mental impairments as required by SSR 96-8P. Pl.'s Br. at 24–32, Dkt. 18. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th

14

Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). The decision in Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

This is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence, and pace without further analysis. Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite his moderate limitation in concentration, persistence, or pace, Anthony is capable of performing "the basic mental demands of unskilled work within the above parameters." R. 21. Further, here, the ALJ explained why Anthony's moderate limitations in concentration, persistence, or pace, interacting with others, and adapting or managing oneself, did not translate into a limitation in the RFC beyond occasional interaction with others and gradual changes in a customary work setting. R. 16.

As a preliminary matter, contrary to Anthony's argument, the ALJ adequately supported his finding that Anthony could sustain work activity over the course of an eight-hour workday and accounted for Anthony's moderate impairments in his hypothetical questions to the vocational expert ("VE") and the RFC finding in his ruling. The ALJ asked the VE to consider "an individual of the claimant's age, education, and work experience who[] . . . is able to understand, remember, and carry out simple instructions and perform simple tasks, with occasional interaction with others. No greater than 15% on a routine and regular basis. . . could adapt to gradual change in the customary workplace setting." R. 58–59. Substantial evidence supports the ALJ's development of Anthony's RFC. The ALJ is not required to pose hypothetical questions to the VE relating to impairments not supported by the record. See Fisher v. Barnhart, 181 Fed. App'x 359, 364 (4th Cir. 2006) (citing Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005)) ("[A] hypothetical question is unimpeachable if it 'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient evidence."); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (stating vocational expert's opinion must be in response to hypothetical questions that "fairly set out all of claimant's impairments").

The ALJ acknowledged Anthony's testimony that due to his mental impairments he has difficulty being around others and keeps to himself most of the time. R. 15, 52, 54–55. He also considered Anthony's testimony and medical history including treatment notes indicating his anxiety, panic attacks, anger issues, flashbacks, and depression. R. 15, 21. Nevertheless, the ALJ noted that Anthony's allegations were "partially consistent with the medical evidence of record" given that he "presented as withdrawn, depressed, angry, and/or anxious at times" but also during the same, and other, examinations "presented as cooperative and appropriate in interactions." R. 15; see, e.g., R. 374, 433, 888, 963. The ALJ also noted that Anthony lives with

a friend and did not identify any serious issues getting along with her. R. 15. Further, the ALJ noted that Anthony did not receive significant mental health treatment until January 2018, a few months after he filed his disability application. R. 21. After a thorough review of the Anthony's mental health records and treatments, the ALJ concluded that "considering the claimant's ongoing outpatient treatment for mental health issues… the above mental work-related limitations are appropriate." Id. Finally, the ALJ found both state agency psychologists' opinions persuasive, well supported and consistent with the record. These opinions accommodated Anthony's subjective complaints despite those complaints not being, while noting some of the same mixed examination findings discussed in the ALJ's decision. Thus, the ALJ accommodated Anthony's symptoms in the mental RFC determination. R. 22–23.

  I find that the ALJ adequately explained the RFC restriction that Anthony will be off task less than fifteen percent of the workday (R. 15) which the ALJ discussed in the Step Three analysis. See Richardson v. Berryhill, No. 5:15-CV-173-RJC-DSC, 2019 WL 1354042, at *3 (W.D.N.C. March 26, 2019) (because ALJ "provided ample discussion of how [a plaintiff's] mental impairments impact[ed] her ability to perform work-related tasks," RFC that limited a plaintiff to a nonproduction pace passed muster "because the ALJ contextualized and explained how he reached his conclusion[.]").

  Substantial evidence supports the ALJ's conclusions regarding Anthony's RFC through the opinions of the state agency psychologists and the evidence of record. As such, this court is not "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637.

### D. Subjective Allegations

  Anthony asserts that the ALJ's decision regarding his allegations is not supported by substantial evidence and should be rejected as erroneously insufficient. Pl.'s Br. at 33–38, Dkt.

17

18. As discussed above, the ALJ did not ignore the objective evidence in the record related to his physical and mental impairments. Anthony did not identify specific instances where the ALJ ignored evidence or improperly applied the legal standards. Rather, Anthony asks this court to re-evaluate his subjective allegations and come to a different conclusion from that of the ALJ. That is not the province of this court.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). At this step, objective evidence is not required to find the claimant disabled. Thus, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based

on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

      Contrary to Anthony's argument, the ALJ's opinion includes a detailed discussion of Anthony's medical history, including his allegations, and the ALJ adequately supported his findings that Anthony's allegations were not entirely consistent with the medical evidence and other evidence in the record. R. 19–21. The ALJ adequately considered Anthony's testimony including that he has constant pain in his knees, back and neck, lies down "mostly all day," can only sit and stand for fifteen to twenty minutes, uses a cane monthly when his hip and back pain flares, sometimes has difficulty using his arms, has panic attacks every few days, has mood swings, impulse control problems, keeps to himself, and has difficulty focusing. R. 18, 48–57. The ALJ addressed Anthony's medical visits that were conservative. R. 19–21. Further, the ALJ noted inconsistencies in Anthony's subjective allegations – such as complaining of left-sided numbness yet walking with his cane in his left hand against his left thigh, the wrong side for his reported symptomology. R. 24, 405. The ALJ also noted Anthony was able to cook, clean, maintain personal hygiene, and had "hypertrophied shoulders and upper arm musculature," which suggested that he was doing weight exercises despite his conflicting report that he does not do much around the house and ceased exercising. R. 22; See, 50–51, 54, 464, 469, 474, 478, 488, 493. Thus, despite the discrepancies in his self-reports, the ALJ considered Anthony's subjective complaints and stated that "even assuming that [Anthony's] activities of daily living are more limited in comparison to his past level of functioning, they are still broadly compatible with the above RFC." R. 22.

      This is the ALJ's job, to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v.

Chater, 99 F.3d 635, 638 (4th Cir. 1996). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Anthony's subjective complaints with substantial evidence and that Anthony is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** entering an order **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** Anthony's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: March 4, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge