IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

ANTHONY C.,                                )
                                           )
        Plaintiff                          )  Civil Action No. 7:20-CV-564
                                           )
v.                                         )
                                           )
KILOLO KIJAKAZI, Acting Commissioner       )
of Social Security,                        )  By:  Michael F. Urbanski
                                           )  Chief United States District Judge
                                           )
        Defendant                          )

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on March 4, 2022, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Anthony C. (Anthony) has filed objections to the R&R and this matter is now ripe for the court's consideration.

## I. Background

Anthony filed an application for supplemental security income on October 5, 2017. He initially alleged an onset date of January 1, 2012, but later amended it October 5, 2017. Anthony was 41 years old at the alleged onset date. He seeks disability based on anxiety, panic attacks, learning disability, night terrors, pain in his right knee, hip, and back, sleep apnea, high

blood pressure, numbness in his right leg and foot, chronic constipation, and "anger issues – want to hurt people." R. 221.

The ALJ found that Anthony had severe impairments of cervical and lumbar degenerative changes, sciatica, obesity, major depressive disorder, post-traumatic stress disorder, bipolar disorder, and anxiety disorder, but that none of his impairments met or medically equaled a listed impairment. The ALJ assessed Anthony with the residual functional capacity (RFC) to perform light work with the following additional limitations: He could occasionally perform postural activities, but never climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to cold temperatures and industrial hazards. He was able to understand, remember, and carry out simple instructions and perform simple tasks, occasionally interact with others, and adapt to gradual changes in the customary workplace setting. He was expected to be off task less than fifteen percent of the workday.

Relying on this RFC and testimony from the vocational expert (VE), the ALJ determined that Anthony had no past relevant work, but could do the jobs of laundry sorter, hand packer, and laminator, and that such jobs exist in significant numbers in the national economy. Therefore, the ALJ concluded that Anthony was not disabled. R. 10-27. The Appeals Council denied Anthony's request for review, R. 1-3, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Anthony objects to several of the magistrate judge's conclusions. ECF No. 22.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'"

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. April 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011). See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir. 2010) ("The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein."); Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to

be general objections to the entirety of the report and recommendation. See Veney v. Astrue,

539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely
> reformatting an earlier brief as an objection "mak[es] the initial reference to the
> magistrate useless. The functions of the district court are effectively duplicated
> as both the magistrate and the district court perform identical tasks. This
> duplication of time and effort wastes judicial resources rather than saving them,
> and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of
> Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will

not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated

as a general objection, which has the same effect as would a failure to object. Id.

## III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions.

Rather, judicial review of disability cases is limited to determining whether substantial evidence

supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving

disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v.

Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a

de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter

v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the

record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind,

Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a

directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v.

Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less

than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[2]

Anthony objects to the following findings by the magistrate judge: (1) Substantial evidence supports the ALJ's findings on Anthony's physical RFC; (2) Substantial evidence supports the ALJ's findings on Anthony's mental RFC; and (3) the ALJ properly considered Anthony's subjective allegations.

### A. Residual Functional Capacity Assessment

The process for assessing a claimant's RFC is set forth in Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). The ruling sets out in relevant part the following:

> The RFC must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Id. at *1. Physical abilities set out in 20 C.F.R. 404.1545(b) and 416.945(b) include sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching. Mental abilities set out in paragraph (c) of the regulation include understanding,

---

[2] Detailed facts about Anthony's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 21) and in the administrative transcript (ECF No. 11) and will not be repeated here except as necessary to address his objections.

remembering, and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures in a work setting. Other abilities set out in paragraph (d) of the ruling include those affected by skin impairments or epilepsy, impairment of vision, hearing, or other senses, or impairments which impose environmental restrictions.

In Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis. The Mascio court found that remand may be appropriate when an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where the ALJ's analysis otherwise frustrates meaningful review. In this case, the magistrate judge found that the ALJ performed the required function-by-function analysis and otherwise supported the RFC assessment by summarizing Anthony's medical history and testimony and explaining how he arrived at the RFC with references to the evidence.

**(1) Physical RFC**

Anthony argues that the ALJ cherrypicked the evidence of record and ignored evidence showing that Anthony's physical impairments are more severe than those recognized by the ALJ. See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.")

Anthony's argument is based primarily on the results of a February 7, 2018 consultative examination performed by physical therapist William Mercer, and an opinion from a state

agency physician[3] that relied on the results of the consultative examination. Anthony reported a "spiky feeling in his legs, side and stomach." He also said that he had a three-year history of pain in both knees, his left hip, and in his cervical and lumbar spine. He complained of hand tightness and left lower extremity numbness from his feet into his trunk and up to his shoulder. He had last worked approximately three years previously at an assembly job. He stated that he spent most of the day lying around the house and did not participate in any housework or outside maintenance. R. 404.

Mr. Mercer noted that Anthony was 69 inches tall and weighed 220 pounds. He had "a very well-developed and hypertrophied shoulders and upper arm musculature" with no observable atrophy of lower extremity muscles. Id. Cerebellar testing was negative. Id. His deep tendon reflexes showed no response in his lower left extremity and 1+ at the biceps and upper extremity and 2+ on the right lower extremity. He reported numbness throughout his lower left extremity. Id. His range of motion was significantly decreased throughout his spine and extremities. R. 405.

---

[3] State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act. As members of the teams that make determinations of disability at the initial and reconsideration levels of the administrative review process (except in disability hearings), they consider the medical evidence in disability cases and make findings of fact on the medical issues, including, but not limited to, the existence and severity of an individual's impairment(s), the existence and severity of an individual's symptoms, whether the individual's impairment(s) meets or is equivalent in severity to the requirements for any impairment listed in 20 CFR part 404, subpart P, appendix 1 (the Listing of Impairments), and the individual's residual functional capacity (RFC).

Titles II & XVI: Consideration of Admin. Findings of Fact by State Agency Med. & Psychological Consultants & Other Program Physicians & Psychologists at the Admin. Law Judge & Appeals Council, SSR 96-6P, 1996 WL 374180 (July 2, 1996).

Mr. Mercer noted that Anthony demonstrated significant weakness of all upper extremity musculature and his lower extremity calf musculature below the knees. Requests for specific movements were often accompanied by long periods of inaction with frequent requests to repeat the directions. Id. Anthony's grip strength showed a maximum of 125 pounds on the left and 120 pounds on the right.[4] He demonstrated the expected bell-shaped curve with the five-position grip test and his rapid-exchange grip test also was appropriate. Id.

Anthony transferred very slowly. His preferred sitting position was leaning on his right hip with his left leg extended and some left hip abduction with his foot resting on his cane. It took him approximately twenty seconds to stand up when asked to do so. He walked with his cane in his left hand braced against his left thigh with the cane going forward as his left leg went forward. Id. Mr. Mercer did not test Anthony's ability to lift or handle materials. Id. Anthony was not able to perform a heel-toe walk and could not perform one leg balancing activities. Id. Anthony reported that he could not walk more than five to ten minutes at a time. He said he did not sleep well at night and tossed and turned. Id. Mr. Mercer concluded that based on Anthony's symptoms and reported tolerances, he would not be capable of staying on his feet for even one hour in an eight-hour day and sitting would be limited to less than two to three hours of an eight-hour day. Id.

The ALJ found Mr. Mercer's opinion unpersuasive. He found that while the opinion was superficially supported by Anthony's self-reports and the abnormal findings, the opinion ignored obvious and significant inconsistencies in Anthony's presentation. For example,

---

[4] "The average healthy grip strength of a man is a squeeze of about 72.6 pounds while women typically measure around 44 pounds." https://www.jtechmedical.com/blog/120-get-a-grip-what-does-my-grip-strength-reveal-about-my-health (last viewed March 24, 2022).

although there appeared to be motor loss during the examination, Anthony's musculature was observed to be very well-developed and hypertrophied in his shoulders and upper arms and he had no observable atrophy in his lower extremities. And although Anthony reported left-sided numbness, he walked with his cane in his left hand against his left thigh, which the ALJ said was the wrong side for his reported symptomology. R. 24.

The ALJ further noted that Mr. Mercer's opinion was inconsistent with other physical examinations documented throughout the record showing no motor loss and grossly intact neurological findings. The ALJ cited a recent neurosurgery encounter, where Anthony showed a limping gait on the right and thoracolumbar tenderness but had full strength throughout both upper and lower extremities and normal sensation and reflexes. A straight-leg test was negative bilaterally although Anthony reported a "pulling" sensation on the right side. R. 24, 926-27. The examining physician recommended an MRI of Anthony's cervical spine, lumbar injections, and for him to continue with his medications and physical therapy exercises but did not recommend surgery. R. 24, 927. The ALJ concluded that the Mr. Mercer's opinion was unpersuasive because of inconsistencies within Mr. Mercer's report and with other evidence in the record. R. 24.

The ALJ also noted that a state agency medical consultant assessment by Jack Hutcheson, M.D., dated March 5, 2018, limited Anthony to less than sedentary work. R. 24, 72-74. However, the ALJ found the opinion unpersuasive because it relied heavily on Mr. Mercer's consultative examination, which the ALJ found unpersuasive for the reasons stated. In addition, a quality reviewer with the state agency reversed the initial medical consultant assessment for the same inconsistencies. R. 24. The ALJ found that Dr. Hutcheson's

assessment also was inconsistent with the grossly normal neurological findings seen in Anthony's other medical encounters. Id.

The magistrate judge found that the ALJ properly reviewed and found unpersuasive the medical opinion evidence from Mr. Mercer and the state agency opinion that relied on it to find that Anthony could do less than sedentary work. Anthony objects that the ALJ "cherrypicked" evidence that supported a finding of nondisability and ignored evidence in the record that he says is consistent with Mr. Mercer's evaluation. However, a review of the records cited by Anthony and the ALJ opinion shows that the ALJ acknowledged all the relevant evidence.

Anthony cites to records showing that on April 23, 2018, he had altered sensation in his left lower extremity in no specific dermatomal pattern. R. 436. He was treated that day with osteopathic manipulation with "improvement of dysfunction." R. 437. Although the ALJ did not cite to that particular record, he cited to a record from June 2018 where Anthony was noted to have an antalgic gait favoring his left side and decreased sensation in his lower left leg. R. 21, 841. Anthony also points to medical records from December 4, 2018 and March 19, 2019 where he was noted to have an antalgic gait, difficulty rising from a chair, and moderately reduced range of motion in his lumbar spine on flexion. R. 467, 490-91. The ALJ cited to the evidence and finding from the December 4, 2018 record. R. 19. Therefore, contrary to Anthony's assertion, the ALJ did cite to evidence in the record that was consistent with Mr. Mercer's opinion.

Naturally, the ALJ also cited to evidence in the record that was inconsistent with Mr. Mercer's opinion. For example, records from April 2018, September 2018, and May 2019,

showed no motor loss, grossly intact neurological findings, full strength in both upper and lower extremities, and normal sensation and reflexes. R. 24 (citing R. 439, 926-27, 942).

The medical evidence in the record shows conflicting results from observation, examinations, and objective testing. Some results, particularly those of Mr. Mercer, show that Anthony's limitations would preclude even sedentary work. Other results show him having a full range of motion, normal reflexes, normal strength, and no sensory deficits. Resolving conflicts in the evidence is the job of the ALJ and not the court. Keene v. Berryhill, 732 F. A'ppx 174, 177 (4th Cir. 2018). The court does not "substitute its own judgment for that of the ALJ, but [determines] whether the ALJ's opinion is supported as a matter of fact and law." Id. In this case, the ALJ did not ignore the evidence that supported Mr. Mercer's findings, but explained in narrative form, with citations to the record, why he found unpersuasive Mr. Mercer's opinion as to the extent of Anthony's impairments. The explanation was sufficient to allow the court to determine that the ALJ performed an adequate review of the entire record and that his decision is supported by substantial evidence.

The same is true of the ALJ's assessment of the opinions of state agency physicians Dr. Hutcheson and Robert McGuffin, M.D. As explained above, on March 5, 2018, Dr. Hutcheson found that Anthony could lift a maximum of ten pounds, stand or walk significantly less than two hours, sit for about six hours in an eight-hour workday, and had significant push, pull, and postural limitations. He based his findings primarily on Mr. Mercer's consultative examination. R. 71-74. On March 14, 2018, state agency physician Alicia Blando, M.D., performed a "quality review" of Dr. Hutcheson's opinion. She noted that Dr. Hutcheson relied heavily on Mr. Mercer's consultative examination and that the examination

was internally inconsistent and inconsistent with the other evidence in the record. She pointed

to the description of Anthony's well-developed shoulder and upper arm musculature and good

grip strength, which was inconsistent with the finding that he had proximal weakness in all

other upper extremity musculature such that Mr. Mercer was unable to test his lifting or

material handling capabilities. The findings also were inconsistent with the fact that the record

showed no other report of upper extremity weakness for a twelve-month period. Dr. Blando

also pointed out the inconsistency between Anthony's report of left-sided weakness and the

use of the cane in his left hand. R. 68-69. Based on Dr. Blando's report as well as his own

review of Dr. Hutcheson's and Mr. Mercer's opinions, the ALJ found Dr. Hutcheson's

opinion unpersuasive. R. 24.[5]

On reconsideration, Dr. McGuffin assessed Anthony as being able to lift twenty

pounds occasionally and ten pounds frequently and found he could stand or walk about six

hours in an eight-hour workday and sit for six hours in an eight-hour workday, with additional

postural limitations. R. 108-10. The ALJ found the opinion persuasive to the extent it was

supported and consistent with the record, but he assigned slightly different postural and

environmental limitations based on later evidence in the record. R. 23.

The magistrate judge determined that the ALJ properly assessed the opinions of the

state agency physicians and cited the reasons given by the ALJ. The magistrate judge also noted

the ALJ's finding that Dr. Hutcheson overly emphasized abnormal findings from Mr. Mercer's

examination and added that Dr. Hutcheson "ignore[ed] evidence of other encounters,

---

[5] The court notes that Dr. Hutcheson issued a second RFC assessment on April 13, 2018, where he found
Anthony could lift twenty pounds occasionally, ten pounds frequently, stand and walk for six hours in an eight-
hour workday, and sit for six hours in an eight-hour workday, with additional postural limitations. R. 89-92.

including Dr. McGuffin's discounting of Mr. Mercer's limitations." R&R, ECF No. 21 at 13.

Anthony objects that it was error to find Dr. Hutcheson's opinion less persuasive because it was inconsistent with Dr. McGuffin's opinion. However, in discussing the weight to be given to the opinion of a state agency physician, SSR 96-6P explains the following:

> [T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

SSR 96-6P, 1996 WL 374180 at *2 (emphasis added). Therefore, it was not error for the magistrate judge to find that the ALJ properly discounted Dr. Hutcheson's opinion in part because it was inconsistent with Dr. McGuffin's opinion.

Also, the ALJ's decision to find Dr. McGuffin's opinion persuasive and Dr. Hutcheson's first opinion unpersuasive is supported by other evidence in the record. As discussed above, Dr. Hutcheson's first opinion relied on Mr. Mercer's opinion, which the ALJ found to be internally inconsistent and inconsistent with other evidence in the record. The ALJ explained that Dr. McGuffin's opinion was consistent with and supported by the record except for finding that Anthony showed "normal basic physical functioning," which the ALJ found to be overbroad considering Anthony's consistent complaints of pain and the physical abnormalities he cited elsewhere in the determination. R. 23, 109. The ALJ relied on the opinion but assessed slightly different postural limitations.

14

Based on the foregoing, the court agrees with the magistrate judge that the ALJ's opinion regarding Anthony's physical RFC is supported by the record. The court further agrees with the magistrate judge that the ALJ complied with the requirements of Mascio because he assessed Anthony's ability to perform relevant functions and provided a narrative explanation of how he arrived at his conclusions. Accordingly, Anthony's objection to this finding is **OVERRULED**.

### (2) Mental RFC

The mental RFC assessment is discussed in SSR 96-8p, which provides that when determining whether a claimant has a severe mental impairment at Step 2 of the sequential evaluation,[6] or meets a listing for a mental impairment at Step 3 of the sequential evaluation, the adjudicator assesses an individual's limitations and restrictions from a mental impairment in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The mental disorders listings are set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. However, the limitations identified in the listing criteria are not an RFC assessment, and the mental RFC assessment

---

[6] In conducting the sequential evaluation, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the RFC to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Id.

used at Steps 4 and 5 of the sequential evaluation requires a more detailed assessment "by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." SR 96-8p, 1996 WL 374184 at *4.

As with the physical RFC, when assessing the mental RFC, the adjudicator considers the claimant's medical history, medical signs, and laboratory findings, the effects of treatment, reported daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured environment, and work evaluations, if available. Id. at *5. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. at *7.

Anthony objects to the magistrate judge's finding that the ALJ's mental RFC is supported by substantial evidence. He argues that it was error for the ALJ to discount the severity of Anthony's mental impairment because at some appointments he was withdrawn, depressed, angry, and anxious, while at others he was cooperative and appropriate in his interactions. The Fourth Circuit has cautioned that "[b]ecause symptoms of mental illness may wax and wane over the course of treatment, the fact that [plaintiff] exhibited fair judgment or appeared cooperative on certain specific occasions is not inconsistent with the conclusion that she is unable to work." Testamark v. Berryhill, 736 F. Appx 395, 398-99 (4th Cir. 2018). The court also explained that an ALJ should not "seize[ ] on insignificant inconsistencies in the treatment record while overlooking the record's broader import." Id. at 399.

In Anthony's case, the ALJ did not find that further mental impairment limitations were warranted because although Anthony at times presented with observed mental status abnormalities in terms of his mood, affect, speech, eye contact, insight, and judgment, R. 21, 411, 433, 439, 829, 897, at other times his mood and affect were fairly normal in a variety of medical settings. R. 21, 414, 436, 903. The times when Anthony has presented with a normal affect and mood are not minor inconsistencies in the context of the entire record but represent his symptomology a fair amount of the time. More importantly, the ALJ noted that even when Anthony presented with a depressed mood and blunt affect, examination notes were essentially normal and recorded normal or unremarkable memory, attention, concentration, and thought processing. R. 21, 411, 467, 829, 963. Accordingly, the court finds that the ALJ did not make the error noted in <u>Testamark</u> of discounting the severity of Anthony's mental impairments based on a few inconsistencies. Rather, the ALJ assessed the record as a whole and explained how he arrived at his conclusions with reference to the record.

Further in support of his determination, the ALJ noted that Anthony has not required psychiatric hospitalization for treatment of his symptoms. R. 21. The ALJ also cited the opinion evidence of the state agency consultants, who found that Anthony had moderate limitations in understanding, remembering, and applying information, interacting with others, and in concentrating, persisting, and maintaining pace. The state agency experts found that Anthony had a mild limitation in his ability to adapt or manage himself, while the ALJ found that the record supported a moderate limitation. R. 14-16, 22-23.

Anthony also objects that the ALJ did not explain how he arrived at the RFC restriction that he would be off task less then fifteen percent of the workday. The magistrate judge determined that the ALJ adequately explained this finding, citing in support Richardson v. Berryhill, No. 5:15-CV-173-RJC-DSC, 2019 WL 1354042, at *3 (W.D.N.C. March 26, 2019). In Richardson, the court found that the ALJ's determination that the plaintiff could remain on task despite her moderate limitations in concentration, persistence, and pace was supported by substantial evidence when the ALJ cited to medical evidence and opinion evidence to find that the plaintiff's moderate difficulties would not prevent her from performing work consistent with the RFC. Id., 2019 WL 1354042, at *2. The court found that "in light of the ALJ's full decision and analysis, the ALJ's RFC limitation to a nonproduction pace passes . . . muster because the ALJ contextualized and explained how he reached his conclusion regarding Plaintiff's RFC." Id., 2019 WL 1354042, at *3.

The ALJ in Anthony's case explained that he found that Anthony had a moderate impairment in concentration, persistence, and pace because he reported symptoms such as flashbacks and poor sleep due to nightmares and there was one notation in the record of his having psychomotor agitation. However, the ALJ also explained that treatment notes generally described Anthony as being alert and oriented, with fair to good attention and concentration and no obvious psychomotor deficits. During a field interview, Anthony displayed no obvious deficits with concentration or answering questions. The ALJ also noted that on one occasion Anthony reported to a provider that he did some cooking and cleaning, although he denied engaging in those activities at the hearing. R. 15. The ALJ then explained that based on the evidence cited and other evidence in the record, Anthony had no more than a "moderate"

limitation in concentration, persistence, and pace which was accommodated by the limitation that he was expected to be off task less than fifteen percent of the workday and should avoid climbing and concentrated exposure to hazards. R. 15.[7] The court finds this explanation adequate, as the ALJ clearly explained the basis for the limitation.

Anthony does raise two issues with which the court agrees. The ALJ discounted Anthony's claims of severe symptomology in part because he did not begin to receive treatments for his complaints until a few months after he filed his disability application. R. 21. The ALJ appears to question the severity of Anthony's complaints because he did not seek treatment earlier, but there could be any number of reasons for the delay. In the absence of any evidence in the record on this point, the court will not speculate as to why Anthony did not seek treatment earlier.

The ALJ also discounted Anthony's testimony about his ability to get along with people because he testified that he lived with a friend and did not identify any serious issues getting along with her. R. 15. The court first notes that Anthony reported that when his roommate attempted to engage him, it triggered irritability and anger on his part. R. 432. He also told a provider that he was having more frequent arguments with his roommate and broke his television during a bout of anger. R. 849. Therefore, Anthony does appear to have had some difficulties getting along with his roommate. Moreover, the ALJ did not explain how the ability to live with a roommate reflects on a person's ability to get along with other people in the

---

[7] A "moderate limitation" means that a person has a fair ability to function in the area independently, appropriately, and effectively on a sustained basis. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(F)(2)(c).

workplace. Therefore, the court does not find Anthony's relationship with his roommate to be substantial evidence that he can get along with coworkers.

Although the court does not find these two reasons to be substantial evidence supporting the ALJ determination, the court agrees with the magistrate judge that the ALJ determination otherwise is supported by substantial evidence as set forth above. Therefore, Anthony's objection to the finding that the ALJ properly assessed his mental RFC is **OVERRULED**.

### B. Subjective Allegations

Anthony asserts that the magistrate judge erred in concluding that the ALJ adequately supported his finding that Anthony's subjective allegations were not entirely consistent with the other evidence in the record. When evaluating a claimant's reported symptoms, the ALJ first considers whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's symptoms. Once an underlying physical or mental impairment is established, the ALJ evaluates the intensity and persistence of symptoms to determine the extent to which the symptoms limit a claimant's ability to perform work-related activities. Social Security Ruling 16-3P Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). In making the second determination, the ALJ first looks at the objective medical evidence. Id. at *5. If the ALJ cannot make a disability determination that is fully favorable based on objective medical evidence, other evidence, such as statements from the claimant, medical sources, and other sources are considered. Id. at *6.

However, statements about symptoms alone will not establish disability. 20 C.F.R. §

404.1529(a).

> In evaluating the intensity and persistence of your symptoms, including pain,
> we will consider all of the available evidence, including your medical history, the
> medical signs and laboratory findings, and statements about how your
> symptoms affect you. We will then determine the extent to which your alleged
> functional limitations and restrictions due to pain or other symptoms can
> reasonably be accepted as consistent with the medical signs and laboratory
> findings and other evidence to decide how your symptoms affect your ability to
> work.

Id.

In Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 95 (4th Cir. 2020), the Fourth

Circuit reiterated that "'while there must be objective medical evidence of some condition that

could reasonably produce the pain there need not be objective evidence of the pain itself or

its intensity.'" Id. at 95 (citing Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Craig v.

Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hines v. Barnhart, 453 F.3d 559, 564-65 (4th Cir.

2006)). The plaintiff in Arakas alleged disability in part based on her diagnosis of fibromyalgia,

"a disease whose 'symptoms are entirely subjective,' with the exception of trigger point

evidence." Id. at 96 (quoting Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)).

The Arakas court held that it is error for an ALJ to discount a plaintiff's subjective

complaints of pain and fatigue based largely on the lack of objective medical evidence

substantiating her statements. Id. The ALJ relied principally on findings of a full range of

motion and lack of joint inflammation to discount Arakas' subjective complaints as being

inconsistent with the objective evidence, but in doing so he applied an incorrect legal standard.

Id. The error was "particularly pronounced" in a case involving fibromyalgia, a disease whose

symptoms are entirely subjective. Id. However, even in cases where an impairment is

confirmed by objective medical findings, an ALJ may not discount subjective evidence of pain solely on a lack of objective evidence of pain intensity. Lewis, 858 F.3d at 866.

Anthony first argues that the ALJ ignored the objective evidence documenting decreased sensation and weakness in Anthony's lower left leg. However, as discussed above, the ALJ acknowledged the medical evidence in the record that supported Anthony's allegations as well as evidence that did not support the allegations.

Anthony next argues that the ALJ should not have relied on the fact that he was able to cook, clean, maintain personal hygiene, and exercise to find that he was not as limited as he suggested. With regard to the first three factors, the court agrees that they are not substantial evidence that Anthony is not as limited as he suggests. In Arakas, 983 F.3d at 101, the court noted that "[a] claimant's inability to sustain full-time work due to pain and other symptoms is often consistent with her ability to carry out daily activities." The court emphasized that "'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.'" Id. (quoting Lewis, 858 F.3d at 868, n.3).

However, the court finds that other evidence in the record, in addition to the objective evidence, supports the ALJ's analysis of Anthony's subjective allegations. For example, the ALJ properly relied on Anthony's report to the physician's assistant at the neurosurgeon's office in May 2019 that "he was no longer weightlifting and even [had] trouble doing body weight exercises, such as pullups." R. 20, 926. The fact that Anthony could do body weight exercises, including pullups, is substantial evidence that he is not as impaired as he alleged. In addition, the ALJ observed that Anthony's treatment has been fairly conservative, with no surgery recommended and no hospitalizations, either for his back and extremity impairments

22

or for his mental impairments. See Dunn v. Colvin, 607 F. App'x 264, 273 (4th Cir. 2015) (finding that it is appropriate for the ALJ to consider the conservative nature of a plaintiff's treatment along with other factors when assessing subjective allegations). The ALJ further noted that while Anthony has had an antalgic gait at some visits, at others he has been observed to walk without a limp, list, or pelvic tilt. He has been described as pleasant, alert, oriented and with clear mentation despite his complaints. At one visit, Anthony had a limp on his right side, but was able to rise from a seated position without difficulty and walk without an assistive device. Anthony also was described as having well-developed and hypertrophic musculature in his shoulders and upper arms. The court finds that overall, the ALJ properly supported his determination by noting the inconsistencies in the objective evidence and also by citing to other evidence in the record.

The court agrees with the magistrate judge that the ALJ properly explained why he discounted Anthony's allegations of disabling physical and mental impairments and that his determination is supported by substantial evidence. Accordingly, Anthony's objection to this finding is **OVERRULED**.

## V. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. Therefore, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: 03-25-2022

Michael F. Urbanski
Chief United States District Judge